958 So.2d 48 (2007)
Denice Leblanc Ott, Wife of/and, Scott J. OTT
v.
Salvadore SANSONE, Jr., Patricia A. Sansone and Linda Sansone Lott.
No. 06-CA-696.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2007.
*49 Darrin M. O'Connor, Donovan & Lawlar Law Firm, Covington, Louisiana, for Plaintiff/Appellee.
Richard A. Tonry, Michael C. Ginart, Jr., Kim C. Jones, Cullen A. Tonry, Jeremy Lee, Tonry & Ginart Law Firm, Chalmette, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On October 21, 2005, plaintiffs, Denice and Scott Ott ("the Otts") filed a Petition for Specific Performance of Contract to Sell Immovable. In their petition, the Otts alleged they had entered into a contract with Salvadore Sansone, Jr., Patricia A. Sansone, and Linda Sansone Lott ("the Sansones") on July 18, 2005 for the purchase of the Sansones property located at 3116 41st St., Metairie, LA. The Otts paid a $1,000 deposit to the Sansones per the purchase agreement. According to that agreement, the Act of Sale was to take place by September 1, 2005. Hurricane Katrina then hit on August 29, 2005, therefore, the Act of Sale did not occur.
The Sansones offered to proceed with the sale by written letter dated October 5, 2005 and the Otts accepted that offer on October 6, 2005. The parties then agreed to appear on October 19, 2005 for the Act of Sale at Bayou Title. Linda Lott was the only defendant to appear on that date and she had power of attorney for the other two owners. The Otts claim they appeared with certified funds for the down payment, but their lender advised that the balance of the funds would not be available until the morning of October 20, 2005. According to the Otts petition, Linda Lott declined to execute the act of sale until all funds were available. The Otts allege they all agreed to appear the morning of October 20, 2005 to execute the act of sale, exchange keys and disburse funds. However, later on the evening of October 19, 2005, Lott went to the Otts home and returned their deposit and advised the Otts they would not sell the property to the Otts. Lott then went to Bayou Title on October 20, 2005 and informed them she would not execute the act of sale.
The Otts allege they were ready to perform their obligation under the contract, but the Sansones refused to appear and execute the act of sale. Therefore, the Otts sought specific performance and damages.
The Sansones filed an Answer and Reconventional Demand on November 9, 2005. In their reconventional demand, the Sansones alleged that after Hurricane Katrina, they tried to contact the Otts without success. They finally reached the Otts and the Otts committed to going forward with the Act of Sale. The act of sale was scheduled for October 14, 2005, but was cancelled by the Otts at the last minute because the Otts had not given the home-owner's insurance declaration to the lender. The act of sale was rescheduled for October 19, 2005. The Sansones allege they called before that date to make sure everything was in order and they were *50 assured it was. Then at the act of sale, Linda Lott, acting with power of attorney for the Sansones, was asked to sign the documents, but was told the funds were not available and would probably be available the next day. Lott then refused to sign the documents. The Otts filed an Answer to the Reconventional Demand on December 6, 2005.
On March 8, 2006, the Otts filed a motion for summary judgment arguing there was no dispute that the Sansones breached the contract. The Otts argued the offer made by the Sansones on October 5, 2005 to proceed with the sale did not set forth a certain period of time within which to proceed with the Act of Sale, so it must only be done in a reasonable amount of time. It was first scheduled for October 14, 2005, and then postponed until October 19, 2005. The Ott's argued the act of sale would have actually taken place on October 20, 2005 if the Sansones would have performed their obligation. The Otts argue this was within a reasonable amount of time after the offer to proceed with the sale was made by the Sansones and accepted. The Otts claim that the Sansones did not go through with the sale because they wanted to take advantage of rising property values after Hurricane Katrina. The Otts point out that the Sansones relisted an ad on ForSaleByOwner.com on October 19, 2005 to sell the property for $197,500.00, which is $30,500 more than the price to be paid by the Otts.
The Otts submitted several documents in support of their motion for summary judgment including correspondence sent between the parties after the hurricane. The Otts submitted a copy of the letter sent from Patricia Sansone to the Otts dated October 5, 2005 stating all parties had agreed to proceed with the sale as is at the previously reduced price of $167,000. The letter also stated that the Otts should notify Linda Lott in writing by October 7, 2005 if they wished to proceed. If no response was received, Sansone indicated the contract would be considered null and void and the $1000 deposit would be returned.
Also submitted was an October 6, 2005 email from the Otts to the Sansones indicating a letter had been delivered to Linda Lott. The letter delivered to Lott confirmed that the Otts wished to continue with the purchase of the property and they attached an insurance policy and proceeds form. The letter also stated the Otts would be ready to close the early part of the following week, according to the lender and title company.
A letter from the Otts dated October 7, 2005 stated they agreed to proceed with a scheduled closing at Bayou Title on October 14, 2005. The Otts also attached copies of Requests for Admissions they had submitted to the Sansones and the Responses from the Sansones. The Sansones admitted that on October 5, 2005, the Sansones emailed the Otts and offered to sell the house. This email did not set a deadline for the purchasers to obtain a loan or a deadline for the act of sale to take place. The Sansones also admitted that the Ott's accepted the offer on October 7, 2005. The Sansones denied that they agreed at the act of sale on October 19, 2005 to return on October 20, 2005 to proceed with the closing.
The Otts also presented a copy of a cashier's check payable to Bayou Title for $39,721.22 dated October 19, 2005, which represented the down payment the Otts were prepared to pay to the Sansones on that date. The Otts did not provide any evidence of the remainder of the purchase price they claimed would be available on October 20, 2005.
On March 6, 2006, the Sansones filed an Opposition to the Ott's motion and a motion *51 for summary judgment seeking judgment in their favor. The Sansones included an affidavit of Linda Lott dated March 6, 2006 which stated that on the morning of October 14, 2005, she was informed by phone that the sale would not proceed because of a typographical error on the insurance papers. Lott received a call from the mortgage company on October 18, 2005 and was told that the Otts had to get a new lender. Lott further stated that Vance Ott of Bayou Title and the staff tried to get her to sign the closing papers even though they admitted the funds were not available. Ashley of Vance Ott's office told Lott that three separate checks had been issued for the three sellers. Lott went to Ott's office the morning of October 20, 2005 to get her original succession documents and Ott told her he could probably get the funds that day. No evidence was presented to show that the funds were available, other than the check for the down payment, or whether the Ott's actually had financing in place to complete the transaction.
A hearing on the two motions for summary judgment was held on March 13, 2006. On March 27, 2006, the trial court issued a Judgment granting the motion for summary judgment on behalf of the Otts finding the Sansones breached the contract with the Otts to sell the property. The trial court ordered the Sansones to appear at Bayou Title within 30 days to execute the act of sale.
The Sansones filed a Motion for New Trial for Reargument Only and Requests for Written Reasons. The trial court denied that motion on May 26, 2006. The Sansones filed a Motion and Order for Suspensive Appeal on June 1, 2006.
For the reasons which follow, we reverse the judgment of the trial court granting the Otts' motion for summary judgment and remand this matter to the trial court for further proceedings.

DISCUSSION
This is an appeal of a grant of a motion for summary judgment. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Bagley v. Professional Services Group, Inc., 03-461 (La. App. 5 Cir. 10/15/03), 856 So.2d 1286, citing, Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342, 345 (La. 1991).
The original act of sale was scheduled to take place by September 1, 2005, but Hurricane Katrina forced the parties to cancel that act of sale. Through email and mail correspondence, the parties managed to reschedule the act of sale for October 14, 2005. The act of sale again had to be rescheduled to October 19, 2005 because of a problem with the Otts' insurance papers. According to Lott's affidavit, on October 18, 2005 she was told by the Otts' mortgage company that the Otts had to get a new lender for the transaction. Lott further stated that she was told by Ashley of Vance Ott's office that three separate checks had been issued for the sellers. Additionally, on the day of the closing, October 19, 2005, Lott claims Vance Ott and his staff attempted to get her to sign the closing papers even though they admitted the funds were not available. The Otts claim they would have had the money available the next morning, on October 20, *52 2005, and could have proceeded with the closing. However, Lott stated in her affidavit that on the morning of October 20, 2005, Vance Ott of Bayou Title told her that he "could probably get the funds that day."
Based on the affidavit of Lott and other evidence presented with the motions for summary judgment, we find there are genuine issues of material fact regarding whether or not the Otts actually had the financing in place to proceed with the act of sale. Since we find there are genuine issues of material fact in this case, summary judgment is not proper.
Accordingly, we find the trial court erred in granting summary judgment in favor of the Otts. We find there are genuine issues of material fact that preclude the granting of summary judgment. Therefore, we reverse the judgment of the trial court and remand this matter for further proceedings.
REVERSED AND REMANDED.
DALEY J., concurs.
DALEY J., concurs:
I concur with the majority's result reversing the grant of summary judgment by the trial court, but for different reasons.
The evidence presented for this summary judgment shows that plaintiffs are not entitled to specific performance of this contract.
Purchasers/appellees argue that since the purchase agreement of October 5, 2005 did not specify a date upon which the closing was to take place, the Civil Code article allowed a reasonable time in which this was to take place. They argue that October 14th was only 9 days after the date of the purchase agreement. They point out that the original closing of September 1st was 43 days after the original purchase agreement was signed (which also contained the September 1st date of performance), and therefore, pushing the closing back to October 19th and then the 20th, was "reasonable" since it was much fewer than 43 days between the agreement date and the new closing, as evidenced by the time frame the parties contemplated in the original agreement. They also argue that the sellers could have gone through with the "dry closing," that the funds would have been available the next day, and if they weren't, the sellers could have sued the title company.
On appeal, the appellants/sellers argue, in a nutshell, that when the new closing date was selected by the purchasers, this made the term for the performance of the obligation certain, as opposed to uncertain. They argue that the agreement became null and void on October 19th, when all parties showed up for the closing, but purchasers did not have a fully funded loan and were not prepared to transfer the purchase price upon the execution of the papers. They point out that they agreed to one extension of the closing, to October 19th, but did not agree to a second extension to October 20th, the date unilaterally picked by the purchasers' notary.
When the parties agreed on the new closing date of October 14th, which was proposed by the purchasers, and then agreed to extend it to October 19th, the term became "certain" and Civil Code art. 1778, which describes a "reasonable time" for performance of an obligation with no term, became inapplicable. When the funds were not available on the 19th, a fact that the Otts do not dispute, and therefore the sale could not be consummated, the purchasers, not the sellers, were in breach.
In deciding whether to grant specific performance on contracts to sell, the courts have focused on which party was responsible for delays when the closing *53 failed to occur on a specified date. The cases generally have held that a party who causes the delay may not demand specific performance. Deleon v. WSIS, Inc., 31,602 (La.App. 2 Cir. 2/26/99), 728 So.2d 1046, and cases cited therein. It is clear that in this case, the purchasers were in breach, since they could not perform their obligation at the October 19th closing. Therefore, they may not demand specific performance of this contract.
Additionally, the closing date need not have been in writing in the original purchase agreement. If it were originally in writing, it may be extended and evidenced by the conduct and agreement of the parties. Huger v. Morrison, 01-1864 (La. App. 4 Cir. 2/6/02), 809 So.2d 1140. It is true that parties to a closing sometimes mutually agree to extend a closing date; in fact, the parties agreed to one extension, from October 14th to the October 19th. But the sellers did not agree to another extension after the 19th, and they did not agree to sign over the house without the purchase money changing hands.
Accordingly, I concur in the reversal of the grant of summary judgment.