982 So.2d 124 (2008)
BOURGEOIS, BENNETT, L.L.C.
v.
GAUTHIER, DOWNING, LABARRE, BEISER AND DEAN, A PROFESSIONAL LAW CORPORATION, et al.
No. 07-CA-842.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 2008.
*125 Daniel E. Becnel, Jr., Darryl J. Becnel, Law Office of Daniel E. Becnel, Jr., Reserve, LA, for Defendant/Appellant.
Terrence J. Lestelle, Andrea S. Lestelle, Jeffery B. Struckhoff, Lestelle & Lestelle, Metairie, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
In this concursus proceeding, Daniel E. Becnel, Jr., appeals the grant of Summary Judgment in favor of Lestelle & Lestelle law firm, and appeals the denial of his Motion for Costs. We affirm the denial of his Motion for Costs; we reverse the grant of summary judgment, finding ambiguity in the Consent Judgment, thus making the matter not ripe for summary judgment.
The record[1] and briefs reveal that a Petition for Concursus Proceeding (the first concursus) was filed on March 19, 2002 by Bourgeois, Bennett, L.L.C., an accounting firm and the disbursing agent of sums awarded by the court to the defendant attorneys[2] from the AcroMed Limited Fund Settlement created through the settlement of consolidated litigation in the Eastern District of Pennsylvania (In re: Bone Screw Litigation). Bourgeois, Bennett asserted that it filed the concursus proceeding due to a dispute among the defendants named therein[3] as to the appropriate disbursement of the attorneys' fees and costs. The parties therein were various attorneys and law firms who had represented plaintiffs in the Bone Screw Litigation.
As a result, the parties negotiated and confected a Consent Judgment, which was signed by the trial judge on March 6, 2003. Among other things, the Consent Judgment set forth the various disbursement amounts to the defendants. The Consent Judgment also regulated the attorneys' rights and obligations vis a vis each other and particular clients, and other aspects of the management of this litigation, as will be noted below.
On September 25, 2006, Roy F. Amedee filed the instant Petition in Concursus Proceeding (the second concursus), naming the same parties as defendants, except himself and Bourgeois, Bennett, that were named in the original concursus proceeding. This concursus proceeding was *126 prompted by the receipt of an additional disbursement from the AcroMed Limited Settlement Fund to the Brown Group. Amedee noted that he had disbursed most of the awards to the plaintiffs. Further, Amedee stated that he had not disbursed the remaining attorneys fees to the various parties because a dispute currently existed among the Brown Group, including plaintiff, as to the appropriate method (and amount) of disbursement. The Petition in Concursus invited the various parties to assert their claims to the money in the registry of court, which totaled approximately $121,000.00.
On March 8, 2007, Becnel filed a Motion for Costs, alleging that he was owed costs from January, 2002, for storing all of the pedicle screw files, and that he would continue to incur such storage costs into the future, for a total of $53,500.00 (past and future storage fees). Further, he alleged that he would incur disposal costs for the shredding of some of these files in the amount of $11,200.00.
Defendant Lestelle & Lestelle filed a Motion for Summary Judgment, arguing that the clear and unambiguous language of the Consent Judgment required that the entire sum in the registry of the court of the second concursus be awarded and paid to Lestelle.
A hearing was held on July 27, 2007.[4] After considering the Motion and attachments, oppositions thereto, Consent Judgment and arguments of counsel, the trial court found that the Consent Judgment was clear and unambiguous, and awarded the entire amount in the registry of the court to Lestelle & Lestelle. The court also denied Becnel's Motion for Costs. Becnel filed this appeal. No other party has appealed.
Summary Judgment
The first part of this appeal concerns a grant of a Motion for Summary Judgment. A Motion for Summary Judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Ott v. Sansone, 06-696 (La. App. 5 Cir. 4/11/07), 958 So.2d 48.
When a contract can be construed from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary judgment. Sequoia Venture No. 2, Ltd. v. Cassidy, 42,426 (La.App. 2 Cir. 10/10/07), 968 So.2d 806.
This Court, in Kappa Loyal L.L.C. v. Plaisance Dragline & Dredging Co., Inc.,[5] has summed up the law on contract interpretation as follows:
We are obligated to give legal effect to contracts according to the true intent of the parties. LSA-C.C. art.2045. The true intent of the parties to a contract is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art.2046. When the words of a contract are clear and explicit and lead to no absurd consequences, no further *127 interpretation may be made in search of the parties' intent. LSA-C.C. art.2046. In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art.2053. Whether a contract is ambiguous or not is a question of law. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown.
A contract is ambiguous when it lacks a provision bearing on the issue, its written terms are susceptible to more than on interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used. Campbell v. Melton, 01-2578 (La.5/14/02), 817 So.2d 69.
Lestelle's Motion for Summary Judgment claimed that the Consent Judgment was clear and unambiguous in that it provided that "Lestelle shall be the exclusive party to receive and share in any and all attorneys' fees and costs not heretofore covered by any other provision herein . . ." Lestelle further noted that the Consent Judgment was meant to be the complete agreement among the parties, pursuant to paragraph 7 therein. Lestelle supported the Motion for Summary Judgment with a copy of the Consent Judgment, various documents from the AcroMed claims administrator, and a statement of uncontested facts.
At the hearing, the following facts and/or admissions were gleaned through the arguments of counsel.[6] All the parties admitted that all the money in the first concursus proceeding came from a disbursement from AcroMed. All of the parties, with the exception of Becnel, admitted that they knew there was a possibility of a future AcroMed disbursement taking place in time after the signing of the Consent Judgment. All of the parties, with the exception of Lestelle, felt that such a future AcroMed disbursement of attorneys' fees would be divided among all the parties according to a percentage calculated from each party's share of the disbursement in paragraph 1 of the Consent Judgment (virile shares).
Paragraph 5 of the Consent Judgment states:
Fayard, Gauthier . . . and Sibley waive, relinquish and convey their rights to any and all remaining attorneys' fees and costs collected, recovered, due or owed to them and/or the entity informally referred to as the Louisiana "Brown Group" . . . in favor of Amedee, Becnel, Lestelle and Wright who shall be entitled to seek and recover any and all such attorneys' fees and costs due, owed or *128 payable to the Louisiana "Brown Group" . . .
Paragraph 7 of the Consent Judgment states:
Other than the obligations set forth in this Consent Judgment, each and every party hereto releases each and every other party of or from any and all claims, obligations, demands, rights, causes of action, suits, debts, contracts, controversies, agreements, promises of every kind, nature or description whatsoever, whether in law or equity, which are directly or indirectly related to the Pedicle Screw litigation and any and all Pedicle Screw cases except for claims made or filed by third parties.
Paragraph 9 of the Consent Judgment states:
Lestelle shall be the exclusive party to receive and share in any and all attorneys' fees and costs that are not heretofore covered by any other provision herein, including the remaining fees and costs from the Cross, Ulrich and Depuy claims. All other parties to this Consent Judgment waive, relinquish, transfer and convey any and all rights they have of or to all, or a portion of, the attorneys' fees and costs generated by the claims of the parties' Cross, Ulrich and Depuy clients in favor of Lestelle.
The parties opposing Lestelle's Motion for Summary Judgment argued that had the parties contemplated that Lestelle would receive 100% of any future AcroMed money, they could have easily listed AcroMed in paragraph 9, but did not. Lestelle argued that the absence of AcroMed in paragraph 9 is not significant because AcroMed, though unnamed, is included in "any and all attorneys' fees and costs that are not heretofore covered by any provision herein."
The trial court ruled from the bench and assigned these reasons for granting Lestelle's Motion for Summary Judgment:
Thank you. Now having heard arguments from all parties, first, the original concursus in this case was filed in early 2002, and was resolved in April of 2003. The defendants contemplated in that concursus were as follows:
First, all of the funds in the concursus were AcroMed monies. The point of the concursus was to resolve all current and all future monies as is reflected in the consent judgment. The defendants contemplated were AcroMed, Smith, Advanced Spine, Biedermann, Ulrich, Cross and Depuy.
The consent judgment spoke to the AcroMed money, because all of the money in the account in the registry of the Court at the time was AcroMed money. The consent judgment contemplated resolving and splitting the money in the registry of the Court in toto, and that occurred.
The question for the Court is was the consent judgment clear. If the consent judgment is clear, then one, the consent judgment must be read in pari materia, and the conversation for today's purposes is limited to that consent judgment.
This consent judgment was arrived at after one year of negotiations between seven sophisticated parties, Becnel, Amedee, Bourgeois Bennett, Calvin Fayard, the Gauthier Firm, Lestelle & Lestelle, Mike O'Shea, Hugh Sibley and Michael Wright. That isn't seven. Nine sophisticated lawyers who wouldn't have been before the Court if they weren't sophisticated, good lawyers, because we were splitting the fees which resulted from very complex litigation.
The consent judgment was signed by all parties after the consent judgment *129 was circulated among all parties. The language of the consent judgment was negotiated. It was not arrived at overnight. It was arrived at after many hearings and many conversations. The consent judgment is clear and unequivocal on its face.
It disbursed AcroMed money. It specifically assigned the remaining defendants to specific law firms, and by that I mean Mr. Becnel and Mr. Amedee were assigned the Smith and Advanced Spine cases, and the Lestelle Firm was assigned the Biedermann, Ulrich, Cross and Depuy cases, and then there was paragraph 9, so but for AcroMed, the consent judgment assigned all future fees on every single defendant except AcroMed, and then we have paragraph 9, and paragraph 9 of the consent judgment says and any other fees will go to the Lestelle firm, and that takes care of the universe of defendants contemplated, which was the subject of the consent judgment.
Reading the consent judgment in pari materia, and confining it to the four corners of the judgment, since I have found the judgment is clear, the only rational way to read the judgment is that the unspoken fees, which are AcroMed fees, go to the Lestelle's [sic].
Now there is conversation in this case. First, I find that Mr. Wright agreed that he was prepared to argue the motion for summary judgment, and then he did not prove up bad faith or mistake.
Having disposed of that issue, I find that while there is conversation, there is no issue of material fact, and therefore I grant the motion for summary judgment. Thank you all.
We find, however, that the Consent Judgment is ambiguous regarding the disbursement of future AcroMed money.
All parties are in agreement that the money disbursed by the first concursus proceeding, in the amounts listed in paragraph 1 of the Consent Judgment, was AcroMed money and no other, even though the name AcroMed is found nowhere in the Consent Judgment. The AcroMed money was divided among the parties in virile shares, not equally by heads, as evidenced by paragraph 1.
Paragraph 9 has two sentences, which, read in pari materia, create the ambiguity. The first sentence, read alone, supports the position taken by Lestelle, but with the second sentence does not, because therein, the parties' claims to money only from Cross, Ulrich and Depuy are released in favor of Lestelle. The parties do not, in this paragraph or elsewhere, release their claims to any AcroMed money, past or future, in favor of Lestelle. And all parties were in agreement, save Becnel, that they knew a future disbursement of AcroMed money was possible at the time the Consent Judgment was signed.
Other paragraphs in this Consent Judgment clearly assign cases against certain defendants to certain attorneys/law firms. AcroMed was not specifically assigned. In paragraph 5 of the Consent Judgment, Fayard, Gauthier, and Sibley convey their rights to all remaining attorneys' fees owed the "Brown Group" to Amedee, Becnel, Lestelle, and Wright without mention of any particular defendants. This further creates ambiguity.
The fact that Lestelle has done no work regarding the second disbursement of AcroMed money, which appears to have been performed exclusively by Amedee (as noted in the second concursus petition), casts doubt upon Lestelle's claim that the Consent Judgment's paragraph 9 clearly contemplated awarding his firm 100% of any future AcroMed money.[7]
*130 We find that the Consent Judgment is silent regarding the method of disbursing future AcroMed fees. We also find that paragraph 9 of this Consent Judgment is susceptible to more than one interpretation. The language "Lestelle shall be the exclusive party to receive and share in any and all attorneys' fees and costs that are not heretofore covered by any other provision" is subject to the interpretation that it covers everything else, and is also subject to the interpretation that it does not cover AcroMed funds because AcroMed funds are "heretofore covered" by paragraph 1 and/or paragraph 5 of the Consent Judgment. We find that the parties' intent regarding the distribution of future AcroMed funds cannot be ascertained from the language used in the Consent Judgment.
This Court cannot render a judgment, because the Consent Judgment does not set forth the method by which future AcroMed money should be disbursed, notwithstanding that paragraph 7 purports to represent the entire agreement of the parties thereto and entirely regulate the parties' participation in the Pedicle Screw litigation. Some defendants claim that it should be disbursed in the same pro-rata percentages calculated on the disbursement amounts in paragraph 1 of the Consent Judgment. We must reverse the trial court's grant of summary judgment and remand for further proceedings, because resolving this dispute requires factual determinations.
MOTION FOR COSTS
The trial court denied Becnel's Motion for Costs. The court found that the Consent Judgment had already disposed of this issue. We agree.
In his Motion, Becnel claimed a right to storage costs of the files going back to January of 2002. The Consent Judgment was signed on March 6, 2003, over one year later and after much negotiation, as noted by the trial judge in the July 27, 2007 hearing. The issue of Becnel's costs for storage and destruction was clearly addressed in paragraph 4 of the Consent Judgment. Further, since this issue was clearly addressed therein, Becnel, in paragraph 7, clearly released any and all other parties from liability for those storage costs. Additionally, it was made clear at the July 27, 2007 hearing, that Becnel's Motion for Costs contemplated no new files received since the Consent Judgment was signed. The trial court also found that the Consent Judgment had already addressed the issue of the cost of destroying the files when the time came, which would be borne by each party in his virile share. We find no manifest error in the trial court's ruling that these issues were the same ones previously addressed in the Consent Judgment. Nor has Becnel advanced any argument why the same should be revisited.
At the hearing, Becnel also argued that he was entitled to certain fees of $89,500.00. The record reveals that these fees are the subject of a separate judgment in favor of Becnel against the "Oklahoma" group of attorneys. As such, the trial court was entirely correct in disallowing this claim, as Becnel has already prevailed in a separate proceeding.
Accordingly, the judgment denying Becnel's Motion for Costs is affirmed. The *131 Summary Judgment in favor of Lestelle is reversed, and the matter remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] The original designated record lodged in this appeal contained only one pleading, the original concursus proceeding filed in 2002, and the transcript of the hearing on the Motion for Costs and Motion for Summary Judgment. This Court ordered appellant to supplement the record with additional pleadings of record. Appellee, Lestelle & Lestelle, also requested supplementation of the appellate record with additional pleading and documents from the district court record.
[2] Known as the "Brown Group."
[3] Defendants were 1. Gauthier, Downing, Labarre, Beiser and Dean, a professional law corporation; 2. W. Hugh Sibley; 3. Daniel E. Becnel, Jr. (and appellant herein); 4. Calvin C. Fayard, Jr.; 5. Andrea Lestelle; Roy F. Amedee, Jr.; and 7. Kenneth Michael Wright. Defendants were collectively referred to as the "Brown Group."
[4] Judge Fredericka Homberg Wicker presided over this hearing by special appointment at the request of the parties, because she was the presiding judge in this case prior to her elevation to this Court.
[5] 03-124, pp. 6-7 (La.App. 5 Cir. 6/19/03), 848 So.2d 765, 769.
[6] No sworn testimony was taken.
[7] Lestelle has offered to pay Amedee a "reasonable" attorney's fee and unreimbursed costs for his work disbursing this AcroMed money (Lestelle's Motion for Summary Judgment with Incorporated Memorandum). In fact, Amedee has withheld $7,500.00 from the second concursus to cover his reported costs and fees to date, as he asserted in his Response to Summary Judgement [sic] and Statement of Position as to Funds in Registry of the Court.