MARC E. JOHNSON, Judge.
1 ^Defendant, Redman Gaming of Louisiana, L.L.C. (“Redman”), appeals the trial court’s granting of summary judgments in favor of plaintiff, First Bank and Trust (“First Bank”), on the issues of liability and damages in connection with a breach of contract claim. In two separate judgments, the trial court found that Redman breached an enforceable contract and awarded $1,000,000 in damages to First Bank. For the reasons that follow, we affirm both judgments.

FACTS & PROCEDURAL HISTORY

On September 5, 2007, Redman entered into a purchase agreement with Bouree Gaming, L.L.C. (“Bouree”) wherein Red-man agreed to sell “the exclusive right to place and operate ... video gaming devices” at 20 listed locations, as well as *226 other listed property,[1] to Bouree for $1,800,000.[2] The purchase agreement [■¡provided for an initial payment of $50,000, with the balance being owed at the closing on or before September 28, 2007.
On September 21, 2007, Bouree executed a promissory note in favor of First Bank in the amount of $1,400,000. On the same date, all three parties, Bouree, First Bank and Redman, entered into an “Agreement Regarding Repurchase of Assets” (“the Agreement”), in which Redman agreed to repurchase certain assets set forth in the September 5, 2007 purchase agreement between Redman and Bouree in the event Bouree defaulted on its promissory note to First Bank. The Agreement provided that the repurchase price of the assets was the lesser of $1,000,000 or the total amount owed on the promissory note.
On May 19, 2011, First Bank sent a demand letter to Redman advising that Bouree had defaulted on the promissory note and sought to enforce Redman’s obligation to repurchase Bouree’s assets as provided in the Agreement. First Bank specifically requested the repurchase price of $1,000,000. Thereafter, on June 16, 2011, First Bank sent a second demand letter to Redman again requesting that Redman repurchase Bouree’s assets under the Agreement. First Bank noted that the outstanding balance on Bouree’s promissory note exceeded $1,000,000 and, thus, First Bank sought payment by Redman for the lesser repurchase price of $1,000,000.
On July 14, 2011, First Bank filed a Petition for Breach of Contract against Redman claiming that it failed to pay $1,000,000 for the repurchase of Bouree’s assets as required under the Agreement. First Bank further asserted Redman breached the Agreement in bad faith and, thus, sought all damages resulting from the breach. In its prayer for relief, First Bank requested payment of the $1,000,000, attorney’s fees and costs, pre-judgment interest, and all other equitable |4relief. Redman responded by filing a peremptory exception of non-joinder of party, after which First Bank amended its petition to add Bouree as a defendant.
Redman then answered the lawsuit and filed a cross-claim against Bouree seeking transfer of the assets subject to the Agreement in the event Redman was found liable to First Bank. Thereafter, Redman filed a motion for summary judgment seeking dismissal of First Bank’s claims against it on the basis the Agreement was unenforceable because neither First Bank nor Bouree currently owned or possessed all the assets that were subject to repurchase under the Agreement and, thus, the assets could not be repurchased. First Bank responded by filing a cross-motion for summary judgment seeking judgment as to Redman’s breach of the Agreement.
The motions for summary judgment were heard on November 7, 2012. At the conclusion of the hearing, the trial court denied Redman’s motion for summary judgment and granted First Bank’s motion for summary judgment. The trial court instructed First Bank to prepare a judgment. The record shows that both parties submitted proposed judgments on November 15, 2012. In separate letters to the *227 trial court, each party explained there was a disagreement as to whether the trial court’s November 7, 2012 ruling was limited to liability or included an award for damages.
The trial court signed a judgment on November 15, 2012 that granted summary judgment in favor of First Bank as to liability, specifically finding the Agreement was enforceable and that Redman breached the Agreement. The judgment further stated that damages were to be determined at a subsequent hearing or trial. Thereafter, on November 28, 2012, the trial court signed a second judgment granting summary judgment in favor of First Bank, awarding it $1,000,000 plus prejudgment and post-judgment interest. However, on December |fi6, 2012, the trial court, on its own volition, vacated the November 28th judgment. First Bank then filed a motion seeking to clarify/alter/amend the November 15th judgment to include an award of damages in the amount of $1,000,000, which was denied.
First Bank subsequently filed a motion for summary judgment on the issue of damages. After a hearing, the trial court granted the motion against Redman in favor of First Bank and awarded it $1,000,000 in damages. Redman timely filed a suspensive appeal from both the November 15, 2012 judgment finding Red-man breached the Agreement and the January 11, 2018 judgment awarding First Bank damages in the amount of $1,000,000.[3] First Bank answered the appeal, challenging the trial court’s January 7, 2013 denial of its motion to clarify/alter/amend.

ISSUES

Redman argues the trial court erred in granting summary judgment on the issues of liability and damages. As to the issue of liability, Redman contends the Agreement is ambiguous and susceptible of more than one interpretation and, thus, parole evidence is required to determine the intent of the parties. It concludes that because the intent of the parties is at issue, summary judgment is precluded.
Regarding the issue of damages, Red-man contends the trial court erred in awarding $1,000,000 in damages after determining that First Bank did not have a duty to mitigate its damages. Redman contends First Bank had a legal duty to mitigate its damages by pursuing its rights against Bouree. Redman specifically asserts that the trial court erred in finding the Agreement contained a stipulated damage provisions, which the trial court found relieved First Bank of its duty to mitigate damages.
| (Additionally, First Bank argues the trial court erred in refusing to award damages in the November 15, 2012 summary judgment. First Bank contends this failure allowed Redman to subsequently raise the issue of mitigation of damages, which it originally failed to do.

APPLICABLE LAW

Appellate courts review a trial court’s ruling on a motion for summary judgment de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Smitko v. Gulf South Shrimp, Inc., 11-2566 (La.7/2/12); 94 So.3d 750, 755. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, admissions, and any affidavits, admitted for purposes of the *228 motion, show there are no genuine issues of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Smitko, supra. A material fact is one that potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit. Hines v. Garrett, 04-806 (La.6/25/04); 876 So.2d 764, 765 (per curiam ). A genuine issue of material fact is a fact as to which reasonable persons could disagree. If reasonable persons could reach only one conclusion on the state of the evidence, there is no need for a trial on that issue and summary judgment is appropriate. Id.
Contracts are interpreted according to the true intent of the parties. La. C.C. art.2045; Bourgeois, Bennett, L.L.C. v. Gauthier, Downing, Labarre, Beiser & Dean, a P.L.C., 07-842 (La.App. 5 Cir. 3/11/08); 982 So.2d 124, 126. When the words of the contract are clear, unambiguous, and lead to no absurd consequence, no further interpretation may be made or consideration of extrinsic evidence be had in search of the parties’ intent and the contract must be enforced as written. La. C.C. art.2046; Bourgeois, supra. When a contract can be construed from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary judgment. Id. Conversely, when the terms of a contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parole evidence is admissible to clarify the ambiguity or show the intention of the parties. Lomark, Inc. v. LavigneBaker Petroleum, L.L.C., 12-389 (La.App. 5 Cir. 2/21/13); 110 So.3d 1107, 1111, writ denied, 13-654 (La.4/26/13), 112 So.3d 848. In this posture, determining the intent of the parties becomes, in part, a question of fact and the granting of summary judgment is appropriate only if there is no genuine issue as to the material fact. Carter v. BRMAP, 591 So.2d 1184, 1188 (La.App. 1st Cir. 1991).
Whether a contract is ambiguous is a question of law. Koeniger v. New-some, 03-1492 (La.App. 4 Cir. 2/4/04); 873 So.2d 652, 655. A contract is ambiguous when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties’ intent cannot be ascertained from the language used. Lomark, 110 So.3d at 1111. However, “[t]he failure of a contract to provide for every possible alternative does not make the contract ambiguous.” Amoco Production Co. v. Fina Oil & Chemical Co., 95-1185 (La.App. 1 Cir. 2/23/96); 670 So.2d 502, 513, writ denied, 96-1024 (La.5/31/96); 673 So.2d 1037.
A court is not authorized to alter or make a new contract for the parties. When the language of a contract is clear, “it is not the duty of the courts to bend the meaning of the words ... into harmony with a supposed reasonable intention of the parties.” Clovelly Oil Co., L.L.C. v. Midstates Petroleum Co., L.L.C., 12-2055 (La.3/19/13); 112 So.3d 187, 192. In discussing ambiguity as it relates to contracts, the Louisiana Supreme Court has stated:
| ¡/The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity when none exists or the making of a new contract when the terms express with sufficient clearness the parties’ intent. The fact that one party may create a dispute about the meaning of a contractual provision does not render the provision ambiguous. [Internal citations omitted.]
*229 Campbell v. Melton, 01-2578 (La.5/14/02); 817 So.2d 69, 76. The supreme court further noted that even if a contract is “inart-fully drawn” and a party now regrets the final outcome, the contract must be enforced if the plain language of the contract is clear and unambiguous. Id.

DISCUSSION

In its appeal, Redman specifically asserts that the Agreement is unenforceable because of the impossibility of the obligation. Redman maintains that its obligation under the Agreement was to repurchase the listed assets, which consisted of 20 placement contracts. It contends that neither First Bank nor Bouree own or possess all 20 of the placement contracts and, thus, the defined assets cannot be repurchased. Redman maintains the Agreement does not provide for the repurchase of a portion of the assets. Redman argues that because the Agreement does not contain a provision for what happens when less than all of the assets are available for repurchase, it is ambiguous and summary judgment is improper.
To the contrary, we find that the Agreement is clear and unambiguous. The Agreement clearly states that:
WHEREAS, as a condition to First Bank making the Loan to Borrower, Redman has agreed to repurchase the Assets from Bouree upon the occurrence of a[sic] Event of Default (as defined in the Note) with respect to the payment of any sum of principal or interest due under the Note ...
It further states:
Upon the occurrence of a Payment Default which remains uncured for a period of thirty (30) days or more, Red-man agrees to repurchase the Assets from Bouree (the “Repurchase ”) for a purchase price equal to the lesser of (i) $1,000,000, or (ii) the total amount of all unpaid principal and all accrued but unpaid interest due under the [9N ote at the time of the Repurchase.... The Repurchase Price shall be paid by Redman within forty-five (45) days from the date that First Bank delivers written notice to Redman of the existence of the uncured Payment Default and First Bank’s demand that Redman repurchase the Assets from Bouree.
Under the Agreement, Bouree agreed “to deliver the Assets to Redman contemporaneously with the delivery of the Repurchase Price, and agree[d] to execute and deliver any agreements, documents and instruments as may be reasonably necessary to evidence the Repurchase, including without limitation, bills of sale.” Further, under subsection two, the Agreement specifically states:
... Redman acknowledges that (i) it shall look solely to Bouree for delivery of the Assets following the Repurchase; and (ii) it shall have no rights, claims or actions against First Bank in connection with the Repurchase, including without limitation, any right to a refund of the Repurchase Price as a result of nondelivery of the Assets by Bouree.
Under the plain words of the Agreement, Redman’s obligation is to repurchase certain assets upon Bouree’s default on its note to First Bank. Upon Bouree’s uncured default and First Bank’s demand, Redman has an obligation to pay $1,000,000, which is less than the remaining amount owed on the note, to First Bank. It is then Bouree’s obligation to deliver the assets to Redman. The Agreement makes clear that if there any problems relating to the delivery of the assets following the repurchase, Redman’s sole remedy is against Bouree. In other words, Redman has no defense against *230 First Bank as it relates to the recovery of the assets upon the repurchase.
The record shows that First Bank sent its first demand letter on May 19, 2011, notifying Redman that Bouree had been in default on its note for 87 days and demanding repurchase of the assets in the amount of $1,000,000. First Bank sent a second letter on June 16, 2011, again demanding Redman remit $1,000,000 for repurchase of the assets on the basis of Bouree’s default on its note. Redman never challenged Bouree’s default on the note. Thus, under the clear language of the | Agreement, Redman owed First Bank $1,000,000 within 45 days of the first demand. Redman’s concern that it could not recover all the assets listed in the Agreement because Bouree no longer possessed all the assets had no effect on Redman’s obligation to First Bank under the Agreement. Redman’s obligation under the Agreement was triggered by Bouree’s default. By the plain language of the Agreement, any problems Redman has with the recovery of the assets is solely between Redman and Bouree. If Bouree cannot deliver all the assets listed under the Agreement, Redman’s cause of action is against Bouree for breach of contract, not First Bank.
Under the clear and unambiguous language of the Agreement, Redman owed First Bank $1,000,000 upon Bouree’s uncured 30-day default and within 45 days of First Bank’s demand. Redman failed to remit the money to First Bank. We find this to be a clear breach of Redman’s obligation under the Agreement. Therefore, we find First Bank was entitled to summary judgment as a matter of law.
Additionally, we find no merit in Redman’s argument that the trial court erred in failing to consider First Bank’s duty to mitigate damages by first pursuing Bouree in order to reduce the amount of Redman’s liability. Louisiana Civil Code article 2002 provides:
An obligee must make reasonable efforts to mitigate the damage caused by the obligor’s failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.
“This Article adjusts the conflict of interests that would otherwise exist when an obligee neglects to mitigate his damages and thereby exposes the obligor to further liability for consequences resulting from the obligor’s failure to perform that were reasonably avoidable by the obligee.” Lombardo v. Deshotel, 94-1172 (La.11/30/94); 647 So.2d 1086, 1092. The duty of an injured party to mitigate his damages presumes that further damage has occurred following the breach of | n contract. Schroeder v. DiPascal Cabinet Co., Inc., 467 So.2d 1380, 1382 (La.App. 5th Cir.1985).
In this ease, the doctrine is inapplicable as there is no indication that First Bank suffered further actual damage as a result of Redman’s failure to repurchase the assets. Additionally, Redman’s liability has not increased beyond that which was contemplated by the Agreement. Thus, we find no error in the trial court’s refusal to apply the doctrine of mitigation of damages in order to reduce the amount of damages owed by Redman.
Finally, we find First Bank’s claim that the trial court erred in denying its motion to clarify/alter/amend the November 15, 2012 judgment to include an award for damages to be moot. First Bank filed a second motion for summary judgment on December 20, 2012 specifically seeking judgment on the issue of damages. Summary judgment on the issue of damages was subsequently granted on January 11, 2013. Thus, the issue of whether the No *231 vember 15, 2012 should have included an award for damages is moot.

DECREE

For the foregoing reasons, we find First Bank and Trust Company was entitled to summary judgment against Redman Gaming of Louisiana, L.L.C. as a matter of law and affirm both the November 15, 2012 and January 11, 2013 judgments. Redman is to bear all costs of this appeal.

AFFIRMED.

. The other property included 50 Summit VGDs, 9 VLCs, 20 G-Tech Site Controllers and a 2002 Ford 150 truck.

. The purchase agreement divided the purchase price as follows: $770,000 for equipment; $1,000,000 for the customer list and right to serve the customers; $20,000 for good will; and $10,000 for a nonsolicitation agreement.

. The notices of judgment for the November 15, 2012 and January 11, 2013 judgments were mailed by the clerk on January 28, 2013. Redman filed its motion for suspensive appeal on February 27, 2013, which was timely under La. C.C.P. art. 2123.