MARC E. JOHNSON, Judge.
1 ?Defendants, Roger Smith, Dale Higgins and Wright Avenue Associates, L.L.C., appeal the granting of summary judgment in favor of plaintiffs, DROR International, Inc. and NMI Enterprises, Inc. (“DROR”). For the reasons that follow, we affirm in part and reverse in part.

FACTS & PROCEDURAL HISTORY

DROR, a printing company, filed a suit on an open account on July 6, 2007 against Thundervision, L.L.C., individually and d/b/a Home & Gardens of Louisiana Magazine d/b/a Louisiana Home & Gardens d/b/a Louisiana Health Magazine (“Thun-dervision”), Roger Smith (“Smith”) and Dale Higgins (“Higgins”) for the non-payment of six invoices totaling $174,778.03. Plaintiffs subsequently amended their petition to add Wright Avenue Associates, L.L.C. (“Wright”) as a defendant claiming it was the employer of Higgins. DROR alleged |sthe six invoices resulted from printing services it provided pursuant to three separate agreements.
DROR asserted that it entered the first printing agreement on February 5, 2004 with Louisiana Home & Gardens and Smith for the printing and delivery of the magazine, Home & Gardens of Louisiana, on a monthly basis from March 2004 through March 2007. It alleged it entered into a second printing agreement with Thundervision in August 2006 for the printing of a second magazine, Louisiana Health, from August 2006 through September 2009. DROR asserted Smith and Higgins signed this agreement as guarantors. It further alleged it entered a third printing agreement on October 20, 2006 with Smith for the printing of 500,000 subscription reply cards to be inserted in the monthly publication. DROR maintained defendants breached these contracts by failing to pay the submitted invoices for services provided under the contracts.
All three defendants answered the lawsuit, and Thundervision filed a reconven-tional demand alleging plaintiffs breached the contracts by printing the magazine on substandard paper. Thereafter, on May 23, 2008, plaintiffs filed its first motion for summary judgment claiming there were no issues of fact that it rendered printing services, the goods of which were delivered and accepted, resulting in six invoices that remained unpaid. The trial court denied the summary judgment after finding genuine issues of fact existed.
Plaintiffs filed a second motion for partial summary judgment on December 8, 2008 as to five of the six invoices. Defendants Smith, Higgins and Wright also filed a motion for partial summary judgment claiming there was no contractual obligation to guarantee. After a hearing on January 13, 2009, the trial court denied both motions for partial summary judgment. Both plaintiffs and defendants filed separate supervisory writs with this Court seeking review of the trial court’s ruling. JjThis Court denied both writs. DROR International, L.P. v. Thundervision, L.L.C., 09-C-130 (La.App. 5 Cir. 3/3/09) (unpublished writ); DROR International, L.P. v. Thundervision, L.L.C., 09-C-154 (La.App. 5 Cir. 3/27/09) (unpublished writ).
On April 21, 2009, Thundervision filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, Eastern District of Louisiana. On June 1, 2009, Thundervision filed a notice of removal in the 24th Judicial District Court giving notice that the pending state court proceeding was removed to federal court under 28 U.S.C. §§ 1452 and 1334 and Rule 9027 of the *185 Federal Rules of Bankruptcy Procedure, and formed a core proceeding in the bankruptcy case, bearing case number 09-11145. Subsequently, on July 15, 2009, the Eastern District referred a portion of the state case involving claims against Thundervision to Bankruptcy Court, but remanded those claims against Smith, Higgins and Wright to the 24th Judicial District Court.
In September 2009, the Bankruptcy Court issued a preliminary injunction enjoining plaintiffs from pursuing their claims against Smith and Higgins in state court. This injunction was dissolved in June 2010 after the Bankruptcy Court rendered two judgments in favor of plaintiffs and against Thundervision. Specifically, on September 29, 2009, the Bankruptcy Court partially granted plaintiffs’ motion for summary judgment as to five of the six invoices in the amount of $143,728.05. Thereafter, trial was held on the sixth invoice. On June 1, 2010, the Bankruptcy Court awarded plaintiffs $37,688.35 on the sixth invoice. The Bankruptcy Court also awarded Thundervision $18,900.00 for computer fraud under 18 U.S.C. 1030, et seq., and La. C.C. art. 2315, which was to offset the amount owed by Thundervision to plaintiffs.
On September 21, 2010, DROR filed an exception of res judicata and a third motion for summary judgment in the state court proceeding seeking a judgment | ^against Smith, Higgins and Wright as guarantors of the printing contracts deemed valid by the Bankruptcy Court. After a hearing, the trial court denied the exception of res judicata but granted the motion for summary judgment and awarded DROR the full amount of the bankruptcy judgments against Smith, Higgins and Wright as guarantors. Defendants appeal the trial court’s granting of summary judgment finding them liable as guarantors for the debts of Thundervision.

LAW & ANALYSIS

Appellate courts conduct a de novo review of a summary judgment under the same criteria which govern the trial court’s consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730. The summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The burden of proof remains with the movant. La. C.C.P. art. 966(C)(2).
Defendants contend genuine issues of material fact exist regarding the existence of a surety agreement and, thus, summary judgment is precluded. We disagree.
A contract of guaranty is equivalent to a contract .of suretyship. The terms guaranty and suretyship may be used interchangeably. Eclipse Telecommunications Inc. v. Telnet International Corp., 01-271 (La.App. 5 Cir. 10/17/01), 800 So.2d 1009, 1011. Suretyship is “an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so.” La. C.C. art. 3035. Suretyship must be expressed and in writing. La. C.C. art. 3038.
Contracts of suretyship are subject to the same rules of interpretation as contracts in general. Although parole evi *186 dence is inadmissible to vary the terms of a written contract, if the terms are susceptible of more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parole evidence is admissible to clarify the ambiguity and show the intent of the parties. In interpreting provisions of an agreement about which there exists some doubt, a court must seek the true intention of the parties, even if to do so necessitates departure from the literal meaning of the terms. Pelican State Wholesale, Inc. v. Mays, 44,442 (La.App. 2 Cir. 6/24/09), 15 So.3d 341, 343.
DROR attached a copy of two contracts to its motion for summary judgment. The first contract was executed on February 5, 2004 between NMI Enterprises by its president, Nitzan Mendelbaum,[1] and Home & Gardens of Louisiana for the printing of the Home & Gardens of Louisiana magazine from March 2004 through March 2007. On the first page of the agreement, it states: “TERMS: 25 days from invoicing (Shipping date) with personal guaranty.” Smith signed this page as publisher of Home & Gardens of Louisiana. Additional terms and conditions were included on the reverse side, which was also signed by Smith as president of Home & Gardens of Louisiana magazine. Attached to the agreement is a page entitled, “INDIVIDUAL AND PERSONAL GUARANTY” which is signed by Smith without any reference to a representative capacity for JjHome & Gardens of Louisiana. We find this evidence clearly shows Smith signed and intended to sign the guaranty relating to the February 2004 printing agreement in his personal capacity and, thus, is liable for the invoices generated for services provided under the agreement.
The second printing agreement was executed in August 2006 between Thun-dervision, as publisher; DROR, as printer; and Smith and Higgins, as guarantors. The agreement related to the printing of Louisiana Health magazine from August 2006 through September 2009. Paragraph seven of the agreement states: “Guarantee Mr. Roger Smith and Mr. Dale Higgins shall be personally responsible and liable in all respects and without limitation for the Publisher’s performance and timely payment under this Agreement.” The agreement is signed by Smith as publisher of Thundervision, L.L.C., Louisiana Health. Additionally, Smith and Higgins signed on lines under the heading, “GUARANTORS.” Each signed then-names with no indication of any representative capacity. The agreement further noted additional terms and conditions were contained on the reverse side. Paragraph 30 on the reverse side is entitled “Guarantee” and provides, in part, that “the Guarantor unconditionally and personally guarantees the due and punctual payment of the Printer on demand of all money which is payable or may become payable by the Publisher to the Printer.” This page is initialed by Smith and Higgins. Based on this evidence, we find Smith and Higgins absolutely expressed their intent to be personally obligated under the laws of surety-ship for the debts incurred by Thundervision in the printing of the Louisiana Health magazine.
DROR also attached a copy of the six outstanding invoices, which are summarized as follows:

*187
IsInvoice Date Amount Description

# 11343 9/21/06 $29,012.31 Publication of Lotdsiana Health magazine
# 11366 10/2/06 $28,167.20 Publication of October 2006 issue of Louisiana Health magazine
# 11367 10/2/06 $43,197.07 Publication of October 2006 issue of Home & Gardens magazine
# 11415 11/2/06 $30,183.87 Publication of November 2006 issue of Louisiana Health magazine
# 11416 11/3/06 $37,683.35 Publication of November 2006 issue of Home & Gardens magazine
# 11422 11/4/06 $13,167.60 Printing of insert reply cards for Home & Gardens magazine
In our de novo review, we find no genuine of issue of material fact that under the 2004 printing agreement, Smith is liable as a surety for invoices # 11367, # 11416, and # 11422, or a total of $94,048.02; and, under the 2006 printing agreement, Smith and Higgins are liable as sureties for invoices # 11343, # 11366 and # 11415, or a total of $87,363.38.
We find no merit to defendants’ arguments that their surety obligation was extinguished by the alleged failure of DROR to comply with the printing agreements by printing the magazines on inferior paper. The Bankruptcy Court rendered judgment against Thundervision for its failure to pay the six outstanding invoices. In rendering its decision, the Bankruptcy Court determined the alleged breach of the printing agreement did not extinguish the principal obligation. Thus, as guarantors, defendants owe the debt of Thundervision as determined by the Bankruptcy Court.
| ^Regarding the liability of Wright, we find no basis for any judgment against Wright. Wright’s name does not appear on any of the printing agreements. Further, there is no' evidence Higgins, alleged to be an employee of Wright, signed any contract on behalf of Wright. From the evidence presented for the summary judgment, it cannot be said that Wright expressed its intent to be personally bound for the debts of Thundervision. Accordingly, we find the trial court erred in rendering judgment against Wright as a surety-

DECREE

We find summary judgment was properly rendered against Roger Smith and Dale Higgins as guarantors of the debts of Thundervision as itemized in the six outstanding invoices. Accordingly, we affirm that portion of the trial court’s judgment rendering judgment in favor of appellees, DROR International, Inc. and NMI Enterprises, Inc., against Roger Smith in the amount of $94,048.02 and Roger Smith and Dale Higgins in the amount of $87,363.38. We further reverse that portion of the trial court’s judgment rendered against Wright Avenue Associates, L.L.C.; there was no evidence it was a guarantor in this case and, thus, appellees were not entitled to judgment as a matter of law. Costs of this appeal are assessed against appellants Roger Smith and Dale Higgins.

*188
AFFIRMED IN PART, REVERSED IN PART

. Mr. Mendelbaum stated in his deposition that he is full owner of both NMI Enterprises and DROR. He explained that NMI Enterprises used to be the major corporation but when he formed DROR, NMI Enterprises became the general partner of DROR. He stated the two companies act as a print producer.