FREDERICKA HOMBERG WICKER, Judge.
12At issue in this appeal is whether the power of attorney executed by defendants, Mr. Jerry H. Muhs and Ms. Wanda C. Muhs, expressly authorized Mr. Muhs to bind Ms. Muhs personally as a surety on a loan to Montoli & Pitre, LLC, a company they owned together. We conclude that the power of attorney at issue here did expressly authorize this act and therefore affirm the trial court’s grant of summary *58 judgment in favor of plaintiff, Gulf Coast Bank and Trust Company.

FACTS AND PROCEDURAL HISTORY

Together, Mr. Jerry H. Muhs and Ms. Wanda C. Muhs owned, as members, Mon-toli & Pitre, LLC (hereinafter “the L.L.C.”). On September 30, 2009, the L.L.C. secured a Small Business Administration loan from Gulf Coast Bank and Trust (hereinafter “the Bank”) for the principal amount of $132,000.00. This loan was executed by the L.L.C. through Mr. Muhs’ signatures on at least three documents. First, Mr. Muhs signed the promissory note on the loan both as a member of the L.L.C. himself, and as the agent of Ms. Muhs. This promissory note alleges Mr. Muhs’ status as agent for Ms. Muhs was created “by virtue of a | .-¡power of attorney dated September 28, 2009.” Second, Mr. Muhs signed a “commercial guaranty” in which he obligated himself to be personally liable as a surety to the L.L.C.’s loan. Finally, Mr. Muhs signed a separate “commercial guaranty,” as the agent of Ms. Muhs, which obligated Ms. Muhs to be personally liable as a surety to the L.L.C.’s loan. Ms. Muhs’ commercial guaranty stated that Mr. Muhs signed on behalf of Ms. Muhs “by virtue of a power of attorney dated September 28, 2009.”
By his signatures, Mr. Muhs bound the L.L.C. to make regular payments on this loan starting on October 30, 2009. There is no indication in the record that the L.L.C. failed to abide by the loan’s terms during the first two years of its effect. However, from October 31, 2011 onwards, the L.L.C. failed to make payments on the loan and the Bank placed the L.L.C. in default.
On May 29, 2012, the Bank filed suit against the L.L.C., Mr. Muhs, and Ms. Muhs. In this suit, the Bank alleged that these defendants were liable to it for: the principal amount of the loan; accrued interest on the loan; late fees; and attorney’s fees with legal interest.
On January 22, 2013, the Bank moved for summary judgment against defendants. The parties argued this. motion through memoranda with attached exhibits and at a hearing on March 27, 2013. In opposition to summary judgment, defendants argued that Ms. Muhs was not personally liable for the L.L.C.’s loan because she had not validly authorized Mr. Muhs to bind her as a personal surety on the loan.[1]
On April 18, 2013, the trial court granted summary judgment in favor of the Bank. The court found defendants hable for: the loan’s principal amount of 14$130,502.95; accrued interest of $10,527.20 as of January 14, 2013; a per diem of $22.35 for each day thereafter; attorney fees in the amount of 5% of the loan’s principal balance; and the costs of these proceedings.
Thereafter, Ms. Muhs moved for a de-volutive appeal. The trial court granted Ms. Muhs’ appeal on June 24, 2013. Neither the L.L.C. nor Mr. Muhs appealed the trial court’s April 18, 2013 judgment against them.

DISCUSSION

In her sole assignment of error, Ms. Muhs argues the trial court erred in finding her personally liable for the L.L.C.’s debt to the Bank and in granting summary judgment in the Bank’s favor. Ms. Muhs contends that she is free from this liability because she did not authorize *59 Mr. Muhs to execute the “commercial guaranty” on her behalf. While Ms. Muhs does not deny that she and Mr. Muhs signed the above referenced power of attorney document, she asserts that the power of attorney document gave Mr. Muhs authority to act as her agent in her capacity as a member of the L.L.C., but not in her personal and individual capacity. We disagree.
Appellate courts conduct a de novo review of a summary judgment under the same criteria which govern the trial court’s consideration of whether summary judgment is appropriate. DROR Int'l, L.P. v. Thundervision, L.L.C., 11-215 (La.App. 5 Cir. 12/13/11), 81 So.3d 182, 185, writ not considered, 12-0127 (La.3/23/12), 84 So.3d 560. The summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and |5that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The burden of proof remains with the movant. La. C.C.P. art. 966(C)(2).
In the above referenced “power of attorney dated in September 28, 2009,” Mr. and Ms. Muhs described themselves as residents “of the full age of majority of ... North Carolina.” Ms. Muhs then appointed Mr. Muhs to be her “agent and attorney-in-fact” and gave Mr. Muhs the following powers to act:
[Mr. Muhs may] act for [Ms. Muhs] in connection with a loan transaction with Gulf Coast Bank & Trust Company and to execute any and all documents necessary to consummate said loan transaction.
[Ms. Muhs] ... does hereby authorize [Mr. Muhs] to incorporate in said instruments such terms, conditions and agreements as said agent shall deem necessary and proper in his own sole discretion, to sign all papers, documents and acts necessary in order to complete the herein above described transaction, and to do any and all things [Mr. Muhs], in her [sic] sole discretion, deems necessary and proper in connection therewith.
[Ms. Muhs] does further ... give and grant [Mr. Muhs] complete power to perform any and all acts necessary and proper in the premises as fully as [Ms. Muhs] could do if she were personally present and acting for herself.
This power of attorney did not reference the L.L.C.
To resolve Ms. Muhs’ assignment of error, we must determine whether the power of attorney executed by the Muhses validly gave Mr. Muhs authority to bind Ms. Muhs, in her personal capacity, as a guarantor of the L.L.C.’s loan. To answer this question, we first look to the relevant Civil Code articles governing mandate.[2]
The power of attorney at issue is a contract of mandate governed by the provisions of the Louisiana Civil Code, articles *60 2989 et seq.[3] Under our Civil Code, a general mandate may confer authority to do whatever is appropriate under |fithe circumstances. Acts that are incidental or necessary for the performance of the general mandate need not be specified. La. C.C. art. 2995. However, in articles 2996 and 2997, the Civil Code sets forth those instances in which authority of an agent to act on behalf of the principal must be specifically described or “express.” Under Article 2997, authority to “(8) Contract a loan, acknowledge or make remission of a debt, or become a surety” must be given expressly.
Furthermore, while a contract of mandate is not generally required to be in any particular form, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form. La. C.C. art. 2993. Here, the act in question is a suretyship agreement and the law prescribes that a “suretyship must be express and in writing.” La. C.C. art. 3038. Therefore, in order to be valid, Mr. Muhs’ mandate contract must be in writing and expressly give him authority to bind Ms. Muhs as a surety to the L.L.C.’s loan. We find that both requirements are met in this case.
The power of attorney at issue here was written, witnessed, and signed by both the principal, Ms. Muhs, and the mandatary, Mr. Muhs. Furthermore, the power of attorney expressly gives Mr. Muhs authority to act as her agent in connection with “a loan transaction” with the Bank “and to execute any and all documents necessary to consummate said loan transaction.” Ms. Muhs gave Mr. Muhs this authority to act “as fully” as she could “if she were personally present and acting for herself,” Importantly, this power of attorney did not limit Mr. Muhs to acting for Ms. Muhs in her capacity as a member of the L.L.C. Instead, the power of attorney authorizes Mr. Muhs to perform any “any and all acts necessary and proper ... as fully as [Ms. Muhs] could do if she were personally present and acting for herself.” Most particularly, the words “for herself’ authorize Mr. Muhs to bind Ms. Muhs personally, not merely in her capacity as a member of the L.L.C.
|7Ms. Muhs argues that under persuasive authority of the case In re Succession of Aucoin, 99-2171 (La.App. 1 Cir. 11/8/00), 771 So.2d 286, this Court should find that the power of attorney contract at issue in this case did not meet the requirement that authority to bind a person as a surety must be expressly given. We again disagree. In Aucoin, the First Circuit was faced with the question of whether a wife, by a power of attorney, gave her husband the legal authority to donate her immovable property. Id. at 287. The Court correctly recognized that this is another situation where a contract of mandate must expressly give the mandatary authority to donate immovable property in order for the mandatary to have that authority. Id. at 288 (citing La. C.C. arts. 2996 and 2997). The court then went on to analyze the contract of mandate in question. It determined that, while the contract did provide the husband-mandatary with “general authority” over the principal-wife’s affairs, it did not expressly give the husband-mandatary the authority to donate the wife-principal’s immovable property. Id. The court therefore concluded that the husband-mandatary did not have the legal authority to donate the wife-principal’s immovable property. Id.
After studying Aucoin, we find that it is distinguishable from this case. The power of attorney at issue in Aucoin was a gener *61 al grant of authority executed over four years before the transaction in question. In contrast, in the present case, the power of attorney is a limited grant of authority to Mr. Muhs to act “in connection with a loan transaction” with the Bank executed only two days before Mr. Muhs bound Ms. Muhs as a surety on the loan to the L.L.C.
Furthermore, we recognize that under Civil Code article 3021, “[o]ne who causes a third person to believe that another person is his mandatary is bound to the third person who in good faith contracts with the putative mandatary.” In the circumstances of this case, even if we were to find that the mandate contract did 18not expressly give Mr. Muhs the authority to bind Ms. Muhs as a surety for this loan, we would find that Ms. Muhs’ act of executing this particular power of attorney caused the Bank to believe that Mr. Muhs was her mandatary for this purpose and contract with him as such. Therefore, even if we were to find that Ms. Muhs did not give the express authority in question here, we would still find that the trial court’s judgment finding her liable in the stated amounts was correct.
Considering the above, we find that the particular power of attorney executed by Mr. and Ms. Muhs expressly gave Mr. Muhs the power to bind Ms. Muhs as a surety to the LLC’s loan. The trial court correctly granted the Bank’s motion for summary judgment and ordered the defendants to pay amounts in accordance with the terms of the loan.

CONCLUSION

Based on the foregoing, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellants.

AFFIRMED.

. Defendants also argued that summary judgment was improper because the LLC had given the Bank proceeds from the sale of inventory in satisfaction of the loan. However, this argument was abandoned on appeal. See Uniform Rules Courts of Appeal, R. 2-12.4.

. See Eclipse Telecommunications Inc. v. Telnet Int'l Corp., 01-271 (La.App. 5 Cir. 10/17/01), 800 So.2d 1009, 1011 (“A contract of guaranty is equivalent to a contract of suretyship. The terms guaranty and surety-ship may be used interchangeably. Guaranty Bank and Trust Co. v. Jones, 489 So.2d 368 (La.App. 5 Cir.1986). Suretyship is defined as ‘an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so.' [La.] C.C. Art. 3035.”)

. Under La. C.C. art. 2989, "A mandate is a contract by which a person, the principal, confers authority on another person, the man-datary, to transact one or more affairs for the principal.”