MARRERO LAND AND IMPROVEMENT ASSOCIATION, LTD.

VERSUS

PARADIGM INVESTMENT GROUP, LLC

NO. 19-CA-487

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 787-357, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING

April 16, 2020

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Robert A. Chaisson, and Hans J. Liljeberg

**AFFIRMED IN PART,**
**VACATED IN PART AND REMANDED**
    **HJL**
    **FHW**
    **RAC**

COUNSEL FOR DEFENDANT/APPELLEE,
PARADIGM INVESTMENT GROUP, LLC
     Peter J. Wanek
     Lindsay G. Faulkner
     Kathryn T. Trew
     Jose R. Ruiz

COUNSEL FOR DEFENDANT/APPELLANT,
SEENU G. KASTURI
     Stanford B. Gauthier, II
     Lee A. Archer

**LILJEBERG, J.**

Appellant/Third-Party Defendant, Seenu G. Kasturi, appeals a partial summary judgment granted against him and in favor of appellee/third-party plaintiff, Paradigm Investment Group, LLC. After conducting a *de novo* review, we find that pursuant to the clear and unambiguous language of the guaranty agreement entered into between these parties, Mr. Kasturi remains liable for the obligations he bound himself to fulfill in the guaranty agreement. However, the judgment entered by the trial court fails to specify the amount of damages Mr. Kasturi currently owes to Paradigm as a guarantor and also contains language that appears to improperly award Paradigm future undetermined amounts. While affirming the trial court's determination as to Mr. Kasturi's continuing liability under the guaranty agreement, we vacate the portions of the judgment that do not set forth an exact amount of damages that Mr. Kasturi currently owes to Paradigm, as well as the portions of the judgment awarding undetermined future damages. Accordingly, we remand the matter to the trial court to address the specific amount of damages Mr. Kasturi owes to Paradigm in a manner consistent with this opinion and decretal language requirements.

For these reasons and those explained more fully below, we affirm the trial court's judgment in part, vacate in part and remand to the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter evolved from the breach of a commercial lease agreement. Marrero Land and Improvement Association, Ltd. entered into a commercial lease agreement with Paradigm effective on August 1, 2013, with a term of over 20 years for the lease of property located on Lapalco Boulevard in Marrero, Louisiana ("Lease Agreement"). Paradigm was a franchisee of Hardee's and used the leased property to operate a fast food restaurant.

1

In January 2017, Paradigm entered into an Agreement for Purchase and Sale of Assets with HLaR, LLC, which involved HLaR's purchase of seven Hardee's restaurants, including the Lapalco Boulevard location ("Purchase Agreement"). Pursuant to Section 1.4 of the Purchase Agreement, HLaR agreed "to assume and perform the obligations under the Hardee's Franchise Agreement for each Restaurant, the Lease Agreement for each Restaurant, the Cox phone contracts and any other continuing contracts specifically assumed by [HLaR]." As part of the Purchase Agreement, Mr. Kasturi, co-owner of HLaR, agreed to execute a personal guaranty of HLaR's obligations under the Lease Agreement. Section 1.4 of the Purchase Agreement provided as follows with respect to his agreement to provide a personal guaranty:

> The principal owner of [HLaR], Seenu Kasturi, shall personally guaranty and hold harmless [Paradigm] on the assumed lease obligations and post-closing proration's [sic] and payments, which guaranty and hold harmless shall be released eighteen (18) months from the date of Closing provided [HLaR] has fully complied with all obligations and post-closing proration's [sic] and payments and no defaults exist at the time of the requested release.

On January 25, 2017, Paradigm and HLaR entered into an Assignment and Assumption of Lease Agreement through which Paradigm assigned its Lease Agreement with Marrero Land to HLaR. HLaR agreed to perform all of Paradigm's obligations under the Lease Agreement and further agreed in Section 6 of the Assignment and Assumption of Lease Agreement to indemnify, defend and hold Paradigm harmless as follows:

> [HLaR] hereby indemnifies [Paradigm] and agrees to indemnify, defend and hold harmless [Paradigm] from and against any claims, liabilities, losses, costs and expenses (including reasonable attorneys' fees and costs, and court costs) arising from or related to [HLaR's] failure to perform its obligations under the Lease accruing or arising on or after the Effective Date.

On January 25, 2017, Mr. Kasturi and Paradigm also entered into a Guaranty. Section 1 of the Guaranty provides that Mr. Kasturi "guaranties

unconditionally and promises to pay and perform all obligations of HLaR, LLC under the assigned real property leases, including but not limited to, any and all indemnity obligations owing to Paradigm . . . ." Further, Section 12 of the Guaranty requires a writing executed by Paradigm for Mr. Kasturi to be released from the obligations set forth in the Guaranty:

> No provision of this Guaranty or right of Paradigm can be waived nor can any guarantor be released from its obligations except by a writing duly executed by Paradigm.

> Section 17 sets forth the term and conditions for release from the Guaranty:

> 17. Term and Release of Guaranty. This Guaranty shall be released eighteen (18) months from the date of Closing provided [HLaR] has fully complied with all lease obligations and post-closing proration's [sic] and payments and no defaults exist at the time of the *requested release*. [Emphasis added.]

The parties agree the closing date occurred on January 25, 2017.

Paradigm alleges that on July 30, 2018, HLaR sent a letter to Marrero Land stating that it had ceased operations of the Hardee's restaurant on Lapalco Boulevard and further advised that it was paying rent through July 31, 2018. On September 6, 2018, Marrero Land filed a Petition for Breach of Commercial Lease Agreement and Damages against Paradigm, alleging that HLaR, *inter alia*, failed to pay rent in the amount of $6,562.50 due on August 1, 2018. On November 4, 2018, Paradigm filed an answer and third-party demands for defense and indemnity against HLaR and Mr. Kasturi.

On December 18, 2018, Marrero Land filed a motion for partial summary judgment against Paradigm to recover past due rental payments, ground maintenance expenses, unpaid real estate taxes, late fees, attorneys' fees and costs. Marrero Land also reserved its right to recover subsequent amounts due under the Lease Agreement as they accrued. Following a hearing on February 5, 2019, the trial court granted the motion for partial summary judgment and entered judgment

in favor of Marrero Land and against Paradigm for damages totaling $49,815.54, which included rental payments due through December 2018.[1]

Shortly thereafter on March 14, 2019, Paradigm filed the motion for partial summary judgment against Mr. Kasturi, which is at issue in the present matter. Paradigm argued that pursuant to the Guaranty, Purchase Agreement, and Assignment and Assumption of Lease Agreement, Mr. Kasturi must indemnify Paradigm for all amounts it currently owed or would become obligated to pay to Marrero Land under the Lease Agreement. Paradigm also sought to recover attorneys' fees and court costs incurred to enforce Mr. Kasturi's obligations under the Guaranty.

In opposition, Mr. Kasturi argued that according to the terms of the Purchase Agreement and Guaranty, his obligations expired 18 months after the closing on July 25, 2018. He claimed that in order to enforce the Guaranty, Paradigm had the burden to prove that HLaR was in default of its obligations under the Lease Agreement on July 25, 2018, and that Paradigm failed to satisfy this burden in its summary judgment motion. Mr. Kasturi attached four affidavits to his opposition brief to establish that HLaR was in compliance with its lease obligations on July 25, 2018. As a result, Mr. Kasturi argued that he was automatically released from the Guaranty as of that date.

In its reply brief, Paradigm argued that pursuant to the terms of the Guaranty and Purchase Agreement, Mr. Kasturi remained obligated under the Guaranty until he requested and received an approved release from Paradigm. Paradigm pointed to the language in Section 12 of the Guaranty stating that a guarantor cannot be released "except by a writing duly executed by Paradigm" and Section 17

---

[1] Paradigm filed a writ application with this Court seeking supervisory review of the trial court's judgment in favor of Marrero Land, which this Court denied. *See Marrero Land and Improvement Ass'n, Ltd. v. Paradigm Investment Group, LLC*, Case No. 19-C-151 (La. App. 5 Cir. 5/14/19) (unpublished writ decision).

conditioning the release on full compliance with all lease obligations and the existence of no defaults at the time of the "requested release."

The trial court held a hearing on Paradigm's motion for partial summary judgment on May 21, 2019. After hearing oral argument, the district court agreed that the Guaranty required Mr. Kasturi to request and obtain a release from Paradigm to terminate his obligations under the Guaranty:

> Whatever the reason for putting the language that it put into that agreement, it was a contract between the parties and the language is very specific that there needs to be a request to be released by the guarantor. There is no [issue] of material fact there was no request for a release and in light of that, the Court is going to grant the summary judgment as prayed for.

The trial court then entered a written judgment in favor of Paradigm on June 4, 2019, providing as follows:

> **IT IS FURTHER ORDERED** that Partial Summary Judgment shall be entered in favor of Paradigm Investment Group, LLC and against Seenu G. Kasturi as follows:
>
> 1. Ordering Seenu G. Kasturi to assume the cost of Paradigm Investment Group LLC's defense in connection with the claims brought against Paradigm Investment Group, LLC by Marrero Land and Improvement Association, Ltd. in this matter;
>
> 2. Finding Seenu G. Kasturi liable for indemnification to Paradigm Investment Group, LLC for any sums Paradigm Investment Group, LLC pays or becomes obligated to pay to Marrero Land and Improvement Association, Ltd. in connection with the claims brought against Paradigm Investment Group, LLC in Marrero Land and Improvement Association, Ltd.'s Petition for Breach of Lease. This amount includes, but is not limited to, all sums of money Paradigm Investment Group, LLC is obligated to pay to Marrero Land and Improvement Association, Ltd. as a result of the February 5, 2019 judgment that was rendered against Paradigm Investment Group, LLC in this matter;
>
> 3. Awarding Paradigm Investment Group, LLC all attorneys' fees, attorneys' costs, and court costs it has incurred or will incur in defending the claims brought against it by Marrero Land and Improvement Association, Ltd. in this matter; and
>
> 4. Awarding Paradigm Investment Group, LLC all attorneys' fees, attorneys' costs and court costs it has incurred or will incur in enforcing Seenu G. Kasturi's obligations under: (1) the January 25, 2017 Assignment and Assumption of Lease Agreement

entered into between Paradigm Investment Group, LLC and
HLaR, LLC; and (2) the January 25, 2017 Guaranty entered into
by Seenu G. Kasturi for the benefit of Paradigm Investment
Group, LLC.

The trial court also found no just reason for delay and designated the judgment as final pursuant to La. C.C.P. art. 1915(B)(1). Mr. Kasturi filed a timely motion for devolutive appeal, which the trial court granted on July 17, 2019.

## DISCUSSION

On appeal, Mr. Kasturi raises several assignments of error. He contends the trial court erred by granting the motion for partial summary judgment because the Guaranty is subject to rules of strict construction and cannot be extended beyond the 18-month term. Alternatively, he argues that the terms of the Guaranty are ambiguous and under the rules of construction for ambiguous contracts, the Guaranty cannot be extended beyond the 18-month term. Mr. Kasturi next argues that the trial court erred by failing to revise the Guaranty to reflect the intent of the parties to terminate the Guaranty after 18 months, or alternatively to determine that genuine issues of material fact exist on this issue.

Mr. Kasturi also contends the trial court erred by imposing unlimited and unspecified future liability for damages and attorneys' fees against him and further complains that Paradigm failed to mitigate its damages. Finally, Mr. Kasturi contests the portion of the trial court's judgment awarding costs against him.

*Interpretation of the Guaranty*

In his first and second assignments of error, Mr. Kasturi argues that a surety is entitled to strict construction of his guaranty, and that the trial court erred by misinterpreting the provisions of the Guaranty and Purchase Agreement by finding the Guaranty required him to request a release from Paradigm. Alternatively, he contends the provisions regarding the release from the Guaranty are ambiguous.

Appellate courts review summary judgments *de novo*, using the same criteria that governs the trial court's consideration of whether summary judgment is appropriate, asking whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Favre v. Boh Bros. Const. Co., L.L.C.*, 11-451 (La. App. 5 Cir. 3/13/12), 90 So.3d 481, 485, *writ denied*, 12-1024 (La. 6/22/12), 91 So.3d 976. The summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law. *Id*. The determination of whether a contract is clear or ambiguous is a question of law. *Power v. State Farm Fire and Cas. Co.*, 15-796 (La. App. 5 Cir. 5/26/16), 193 So.3d 471, 473.

A contract of guaranty is equivalent to a contract of suretyship and the two terms may be used interchangeably. *DROR Int'l, LP v. Thundervision, LLC*, 11-215 (La. App. 5 Cir. 12/13/11), 81 So.3d 182, 185, *writ not considered*, 12-127 (La. 3/23/12), 84 So.3d 560. A suretyship is an accessory contract by which one binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. La. C.C. art. 3035. Suretyship may be qualified, conditioned, or limited in any lawful manner. La. C.C. art. 3040.

Mr. Kasturi first argues that a guaranty must be strictly construed in a guarantor's favor. To support this position, he relies on older jurisprudence citing to a former version of La. C.C. art. 3039, which provided that "[s]uretyship can not be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract."[2] The Civil Code provisions governing suretyships were revised, amended and reenacted by Acts 1987, No. 409, §1, effective January 1, 1988. La. C.C. art. 3038 is the current provision addressing the formal

---

[2] The current version of La. C.C.P. art. 3039, enacted pursuant to Acts 1987, No. 409 and effective on January 1, 1988, provides that "[s]uretyship is established upon receipt by the creditor of the writing evidencing the surety's obligation. The creditor's acceptance is presumed and no notice of acceptance is required."

requirements to establish a suretyship and states "[s]uretyship must be express and in writing." The revised provisions do not retain the language of former La. C.C. art. 3039 providing that a suretyship should be "restrained within the limits intended by the contract."

Furthermore, the Louisiana Supreme Court has stated in more recent jurisprudence that suretyships or contracts of guaranty are subject to the same rules of interpretation as contracts in general. *Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586 (La. 4/1/11), 61 So.3d 507, 558; *Ferrell v. South Central Bell Tel. Co.*, 403 So.2d 698, 700 (La. 1981); *see also N.E.N.H., LLC v. Broussard-Baehr Holdings, LLC*, 13-893 (La. App. 5 Cir. 5/14/14), 142 So.3d 91, 94, *writ denied*, 14-1183 (La. 9/19/14), 149 So.3d 247. Accordingly, while La. C.C. art. 3038 requires that a suretyship must be express, the interpretation of the suretyship or guaranty is subject to general rules of contractual interpretation rather than "strict construction."

Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045; *First Bank and Trust v. Redman Gaming of La., Inc.*, 13-369 (La. App. 5 Cir. 12/12/13), 131 So.3d 224, 228. When the words of the contract are clear, unambiguous, and lead to no absurd consequence, no further interpretation may be made or consideration of extrinsic evidence be had in search of the parties' intent and the contract must be enforced as written. La. C.C. art. 2046; *First Bank and Trust*, *supra*. When a contract can be construed from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary judgment. *Id*. A contract provision that is susceptible to different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La. C.C. art. 2049. Each provision in a contract must be interpreted in light of other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.

Although parole evidence is inadmissible to vary the terms of a written contract, if the terms are susceptible of more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parole evidence is admissible to clarify the ambiguity and show the intent of the parties. *DROR*, 81 So.3d at 186. In interpreting provisions of an agreement about which there exists some doubt, a court must seek the true intention of the parties, even if to do so necessitates departure from the literal meaning of the terms. *Id.*

Mr. Kasturi argues that the phrase "shall be released eighteen (18) months from the date of the Closing," in Section 1.4 of the Purchase Agreement and Section 17 of the Guaranty, requires a finding that his release from liability under the Guaranty is mandatory and automatic after 18 months. He contends that the term "requested release" contained at the end of these sections conflicts with the language mandating the release after 18 months and creates ambiguity. However, a review of the entirety of the plain and express language of the Guaranty does not support Mr. Kasturi's arguments regarding an automatic release.

Mr. Kasturi expressly agreed to guaranty HLaR's obligation under the assigned Lease Agreement. Interpreting the provisions of Sections 12 and 17 of the Guaranty in light of each other requires a finding that Mr. Kasturi remained obligated under the Guaranty until he requested and obtained a written release from Paradigm. The plain language of section 12 of the Guaranty required a writing executed by Paradigm to release Mr. Kasturi from the Guaranty:

> No provision of this Guaranty or right of Paradigm can be waived nor can any guarantor be released from its obligation except by a writing duly executed by Paradigm.

Mr. Kasturi fails to address or recognize the requirements set forth in this provision in order to obtain a release from the Guaranty.

Section 17 of the Guaranty then states that Paradigm shall provide the release 18 months after the closing date, only if certain conditions are met – HLaR fully complied with all lease obligations and no defaults existed *at the time of the requested release*:

> This Guaranty shall be released eighteen (18) months from the date of Closing provided [HLaR] has fully complied with all lease obligations and post-closing proration's [sic] and payments and no defaults exist at the time of the requested release.

We find these requirements to obtain a written release from the Guaranty to be clear, explicit and unambiguous. After the passage of 18 months from the closing, Mr. Kasturi could request a written release from Paradigm and Paradigm was required to provide Mr. Kasturi with a written release from the Guaranty if it determined that HLaR was in full compliance with its contractual obligations and that no defaults existed at the time of the requested release. However, it is undisputed that Mr. Kasturi did not request a written release from the Guaranty from Paradigm after the 18-month term expired on July 25, 2018. HLaR failed to comply with its lease obligations shortly thereafter when it failed to pay the August 1, 2018 rental payment.

If we accepted Mr. Kasturi's proposed interpretation that the release was mandatory and automatic after 18 months, then Section 12 of the Guaranty requiring a written release from Paradigm and the words contained in Section 17 requiring full compliance and no defaults at the time of the "requested release" would be rendered ineffective. For these reasons, we disagree with Mr. Kasturi's argument that the trial court misinterpreted the terms of the Guaranty and further decline to consider his alternative argument that the terms of Guaranty are ambiguous. Accordingly, we find the trial court correctly determined that Mr. Kasturi was not automatically released from his obligations under the Guaranty on July 25, 2017, 18 months after the closing date, and we further find that the trial

court did not err by determining that Mr. Kasturi remains liable for HLaR's contractual obligations that he agreed to guaranty.

*Reformation of Guaranty*

In his third assignment of error, Mr. Kasturi argues for the first time that the trial court should have revised or reformed the Guaranty to reflect the parties' true intent regarding the automatic release from the Guaranty after the expiration of 18 months. In response, Paradigm notes that Mr. Kasturi raises this argument for the first time on appeal.

Appellate courts generally will not consider issues raised for the first time on appeal. *First Bank & Trust v. Bayou Land & Marine Contractors*, 12-295 (La. App. 5 Cir. 10/30/12), 103 So.3d 1148, 1152; Uniform Rules–Courts of Appeal, Rule 1-3. Considering this long-standing rule of law, as well as our determination that the relevant language of the Guaranty is clear and unambiguous, we will not consider Mr. Kasturi's arguments raised in this assignment of error.

*Damages*

Mr. Kasturi next argues that the trial court erred by potentially imposing unlimited, unspecified future damages and attorneys' fees due under the Lease Agreement, which has a term of 243 months or 20.25 years. As cited above, Section 2 of the June 4, 2019 judgment renders Mr. Kasturi liable to Paradigm for "any sums of money [Paradigm] pays or becomes obligated to [Marrero Land]" in connection with Marrero Land's petition. The judgment further explains that "[t]his amount includes, but is not limited to, all sums of money [Paradigm] is obligated to pay to [Marrero Land] as a result of the February 5, 2019 judgment that was rendered against Paradigm. . . ." The June 4, 2019 judgment also awarded attorneys' fees and costs Paradigm has or *will* incur to defend the claims brought against it by Marrero Land, as well as to enforce Mr. Kasturi's obligations under the Assignment and Assumption of Lease Agreement and Guaranty.

A valid judgment must be precise, definite and certain.  *Input/Output Marine Systems, Inc. v. Wilson Greatbatch, Technologies, Inc.*, 10-477 (La. App. 5 Cir. 10/29/10), 52 So.3d 909, 915.  When a final judgment is rendered on a money demand, the amount of recovery must be indicated with certainty and precision without reference to other documents in the record.  *Morris, Lee and Bayle, LLC v. Macquet*, 14-1080 (La. App. 4 Cir. 3/23/16), 192 So.3d 198, 207; *Morgan v. Pardue*, 15-149 (La. App. 3 Cir. 10/7/15), 175 So.3d 1053, 1057.  Further, a final judgment must not include amounts to be determined by a future contingency.  *Id.*

We find that the trial court properly designated the June 4, 2019 judgment as a final judgment under La. C.C.P. art. 1915(B)(1), with respect to the issue of Mr. Kasturi's continuing liability under the Guaranty.  However, we must vacate the remainder of Section 2 starting at the top of the second page with the phrase "for any sums of money Paradigm Investment Group, LLC pays . . ." due to the indeterminate nature of the award in that section of the judgment.  As noted above, the amount of recovery must be set forth without the need to refer to other documents in the record, such as the February 5, 2019 judgment.  Accordingly, we vacate the indeterminate language in Section 2 and remand the matter to the trial court to address the specific amount of damages Mr. Kasturi owes to Paradigm in a manner consistent with this opinion and decretal language requirements.

We also find that the trial court improperly awarded Paradigm future, unspecified amounts that have not yet accrued by stating in Section 2 that Paradigm can recover sums it "becomes obligated to pay to Marrero Land," and by stating in Sections 3 and 4 that Paradigm can recover attorneys' fees and costs it "will incur."  We also vacate these portions of the June 4, 2019 judgment.

*Costs*

In his final assignment of error, Mr. Kasturi argues that the trial court erred by casting him liable for costs.  In support of his argument, Mr. Kasturi does not

point to any legal or factual error on part of the trial court, but simply asks this Court to cast Paradigm liable for all costs. Based on our determination that Mr. Kasturi remains liable under the Guaranty, we find this assignment of error is without merit.

## DECREE

For the foregoing reasons, we affirm the trial court's June 4, 2019 judgment granting a partial summary judgment in favor of appellee, Paradigm Investment Group, LLC, and against appellant, Seenu G. Kasturi. We further affirm the trial court's determination that Mr. Kasturi remains liable to indemnify Paradigm under the Guaranty. However, as explained more fully above, we vacate the portions of the judgment awarding damages to Paradigm to the extent that they are indeterminate and improperly award future damages, and remand the matter to the trial court to address the amount of damages Mr. Kasturi owes to Paradigm in accordance with this opinion and decretal language requirements.

**AFFIRMED IN PART, VACATED
IN PART AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**APRIL 16, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-487

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
GABRIEL A. CROWSON (APPELLEE)      LINDSAY G. FAULKNER (APPELLEE)      PETER J. WANEK (APPELLEE)
ANTHONY B. INZINA (APPELLEE)

### MAILED

LEE A. ARCHER (ATTORNEY)
1225 RUSTIC LANE
LAKE CHARLES, LA 70605

TIMOTHY S. MADDEN (ATTORNEY)
NICOLE M. BABB (ATTORNEY)
201 ST. CHARLES AVENUE
SUITE 4500
NEW ORLEANS, LA 70170

JOSE R. RUIZ (ATTORNEY)
KATHRYN T. TREW (ATTORNEY)
1340 POYDRAS STREET
SUITE 2000
NEW ORLEANS, LA 70112

HLAR, LLC
SELF-REPRESENTED LITIGANT
C/O STANFORD B. GAUTHIER, II
1405 WEST PINHOOK ROAD
SUITE 105
LAFAYETTE, LA 70503

STANFORD B. GAUTHIER, II
(ATTORNEY)
1405 WEST PINHOOK ROAD
SUITE 105
LAFAYETTE, LA 70503